**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dravon Ames,<br><br>    Plaintiff,<br><br>v.<br><br>City of Tempe, et al.,<br><br>    Defendants. | No. CV-20-02102-PHX-DWL<br><br>**ORDER** |

  In this civil rights action under 42 U.S.C. § 1983, Dravon Ames ("Plaintiff") alleges that Officers Payne and Conklin of the Tempe Police Department violated his Fourth and Fourteenth Amendment rights by using excessive force against him. Specifically, Plaintiff alleges that, during a traffic stop on October 31, 2018, he was being "cooperative" and "respectful" when Officers Payne and Conklin "brutally and aggressively threw [him] to the ground," "beat[], punch[ed], and brutaliz[ed] him," used a Taser on him, and left him "lying in the middle of the street" while handcuffed.  (Doc. 47 ¶¶ 8-18.)

  As relevant here, Plaintiff also asserts a § 1983 claim against the City of Tempe ("the City"), which is premised on allegations that the City "has a pattern and practice for allowing its Officers to use Tasers on African American[s] and minorities," "has not properly trained its officers on the proper use of force," "fail[ed] to train, supervise, and investigate any of the officers involved in this incident," and "tacitly or overtly sanctioned" a "policy, pattern of practice, or custom" of misconduct, "amounting in a deliberate indifference to Plaintiff's constitutional rights."  (*Id.* ¶¶ 23, 36-38.)

Now pending before the Court is the City's Rule 12(b)(6) motion to dismiss the latter §1983 claim. (Doc. 55.)[1] For the following reasons, the motion is granted.

**DISCUSSION**

I.     Legal Standard

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d at 1144 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-680. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The Court also may dismiss due to "a lack of a cognizable theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.    Count Two

In Count Two of the operative complaint, Plaintiff asserts a § 1983 claim against the City premised on three distinct theories of municipal liability: (1) the existence of an unconstitutional policy, practice, or custom of using excessive force; (2) failure to train or supervise its officers on the proper use of force; and (3) failure to investigate or discipline, and/or ratification of the conduct of, Officers Payne and Conklin. (Doc. 47 ¶¶ 23-24, 37-38, 43.) The Court analyzes each theory in turn.

…

---

[1] Officers Payne and Conklin also move to dismiss Plaintiff's state-law battery claim in Count Three (Doc. 55 at 13), but because Plaintiff now agrees this claim may be dismissed (Doc. 57 at 13), the Court does not address it further. Additionally, Plaintiff's request for oral argument (Doc. 57 at 1) is denied because the issues are fully briefed and argument would not aid the decision process. *See* LRCiv 7.2(f).

A. **Policy, Practice, Or Custom**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A "person" includes local government entities. *Monell v. Dept. of Soc. Svcs. of N.Y.*, 436 U.S. 658, 690 (1978). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. *See also Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 166 (1993) ("[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury."); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("A municipality may not be sued under § 1983 solely because an injury was inflicted by one of its employees or agents."). Thus, "to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which []he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The City argues that, to the extent Count Two is premised on a policy/practice/custom theory, it is deficient because Plaintiff fails to allege similar incidents occurring before the incident at issue here; rather, "Plaintiff has pled nothing more than isolated and/or sporadic incidents" that do not indicate a policy, practice, or

custom of using excessive force. (Doc. 55 at 5-6, 12-13.)

Plaintiff's response is two-fold. First, Plaintiff argues he shouldn't be required, at the pleading stage, to identify any prior incidents that might support a policy/practice/custom claim because that is what discovery is for—to uncover facts that might support such a claim. (Doc. 57 at 11 ["In the present case there was no ability for [Plaintiff] to conduct discovery and gather evidence to prove that a custom or policy was followed that resulted in the violation of his constitutional rights."].) Relying on cases decided between 1986 and 2003, Plaintiff argues that "[a] plaintiff cannot be forced to know what he cannot know" and thus contends that, at least when it comes to *Monell* claims, "a plaintiff is excused from stating specific evidentiary facts before discovery when the municipality controls all of the evidence." (*Id.* at 2.)

Plaintiff is mistaken. Whatever the pleading rules that may have applied to *Monell* claims before *Iqbal* and *Twombly* were decided, it is now well established in the Ninth Circuit that a plaintiff seeking to assert such a claim must allege *facts* that would support the existence of the alleged policy, practice, or custom. *See, e.g.*, *A.E. ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *This standard applies to Monell claims* . . . .") (citations omitted and emphasis added); *Dougherty*, 654 F.3d at 900-01 ("Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*. . . . The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation."). *See also Hyer v. City & Cnty. of Honolulu*,

2020 WL 7038953, *6 (D. Hawaii 2020) ("Prior to 2009, the Ninth Circuit . . . regularly held that a claim of municipal liability under Section 1983 was sufficient to withstand a motion to dismiss based on nothing more than bare allegations of an unconstitutional policy, practice, or custom.  The low pleading threshold was rejected by the United States Supreme Court in [*Iqbal*].  Since *Iqbal*, courts in the Ninth Circuit have repeatedly rejected *Monell* claims based on conclusory allegations that lack factual content from which one could plausibly infer municipal liability.") (citations omitted); *Brown v. City of Mariposa*, 2019 WL 4956142, *4 (E.D. Cal. 2019) ("In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of an unlawful policy. . . .  [W]hile the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court.") (citations and internal quotation marks omitted).

Second, and alternatively, Plaintiff argues that even assuming he is required to provide non-conclusory allegations of a policy/practice/custom at this stage of the proceedings, he has done so because the complaint identifies a "string of excessive force cases against [the City] dating back to 2008."  (Doc. 57 at 11-12.)

This argument is unavailing.  As an initial matter, although the complaint asserts in conclusory fashion that "[t]here are multiple cases of excessive force against the City of Tempe since 2008" (Doc. 47 ¶ 39) and "[t]here are multiple articles regarding the excessive use of force by Tempe police officers" (*id.* ¶ 40), the complaint does not actually identify any of these earlier cases and articles.  This approach makes it impossible to evaluate whether the unspecified incidents discussed in the unspecified cases and articles were factually similar to the incident in this case, such that they could plausibly be viewed as indicative of a policy, pattern, or custom that was the moving force behind Plaintiff's injury.  *Cf. Hyer*, 2020 WL 7038953 at *9 (dismissing *Monell* claim because "there are no facts detailing a history of incidents or any other basis to demonstrate a policy, practice, or custom by the City and County of Honolulu that caused the alleged injury in this case" and "Plaintiffs must assert facts concerning the timing and similarity of prior incidents");

*Blanchard v. City of Los Angeles*, 2021 WL 871997, *3 (C.D. Cal. 2021) ("While the FAC cites to numerous instances, reports, and cases concerning excessive force and others that have indicated a tendency to employ excessive force by Sheriff's Deputies, these do not rise the level of specificity for *Monell* claims."). Additionally, the allegation of "multiple" incidents since 2008 is too vague to suffice. How many is "multiple?" If, for example, there were only two incidents between 2008 and October 2018, this would seem unlikely to serve as plausible evidence of "practices of sufficient duration, frequency, and consistency [such] that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

In response to the motion to dismiss, Plaintiff seeks to belatedly fill these gaps by asserting that "there are at least 15 cases against Tempe regarding § 1983 excessive force claims" and explaining that his counsel "discovered these cases through a basic Boolean search of Westlaw." (Doc. 57 at 9 & n.2.) Plaintiff also attaches, as Exhibit A to his response, an attorney-drafted document that identifies the 15 cases by Westlaw citation. (Doc. 57-1.) An initial problem with this approach is that district courts generally "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Thus, "[c]ourts regularly decline to consider declarations and exhibits submitted in . . . opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." *Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015). Applying these standards, it is questionable whether Exhibit A is properly before the Court. Although, as noted, the complaint alleges the existence of unspecified earlier cases against the City involving claims of excessive force (Doc. 47 ¶ 39), the Court is skeptical that such a vague reference is sufficient to trigger the incorporation-by-reference doctrine with respect to Exhibit A. *Khoja*, 899 F.3d at 1002 ("How 'extensively' must the complaint refer to the document? This court has held that the mere mention of the existence of a document is insufficient to incorporate the contents of a document . . . .

1 A more difficult question is whether a document can ever form the basis of the plaintiff's
2 claim if the complaint does not mention the document at all.") (cleaned up).  Nor does
3 Exhibit A seem like the sort of document that is subject to judicial notice.  Even if judicial
4 decisions and proceedings are, in general, subject to judicial notice, Exhibit A is not a
5 judicial decision or proceeding—it is an attorney-drafted document that simply rattles off
6 a list of case names and citations and asserts, without support, that they qualify as
7 "excessive force cases . . . filed against the City of Tempe."  (Doc. 57-1.)

8 These procedural shortcomings dovetail with a substantive flaw in Plaintiff's
9 approach.  Although Exhibit A provides no details about the 15 cited cases (apart from the
10 case caption and Westlaw citation), the City provides an extensive discussion of the 15
11 cited cases in its reply.  (Doc. 58 at 9-11.)  According to the City, "[t]hese cases fall into
12 four categories, none of which would place Tempe on notice that a previous constitutional
13 violation had taken place and that there was a need for a change.  First, in [five of the cited
14 cases], there were no excessive force claims.  Second, the claims of excessive force were
15 resolved in favor of Tempe in [five more of the cited cases].  The plaintiffs in [three more
16 of the cited cases] never served their complaints.  The remaining two . . . are still pending.
17 Thus, none of the cases cited by Plaintiff could have placed Tempe on notice that there was
18 a widespread pattern and practice of unconstitutional conduct that needed correcting prior
19 to the incident with Plaintiff."  (*Id.* at 11.)  The Court agrees that, assuming the City's
20 description of the 15 cited cases is correct, they would be insufficient to plausibly support
21 the existence of a municipal policy, practice, or custom that could give rise to a *Monell*
22 claim.  Thus, on the present record, the allegations in paragraphs 39 and 40 of the complaint
23 regarding unspecified earlier lawsuits and news articles are insufficient to support a
24 policy/practice/custom claim.[2]

---

[2] The Court uses the phrases "assuming the City's description of the 15 cited cases is correct" and "on the present record" because, due to the manner in which Plaintiff sought to bring the 15 cases to the Court's attention, Plaintiff has not had an opportunity to address the City's characterization of the 15 cases or attempt to explain why they should be deemed sufficiently similar.  Had Plaintiff provided allegations regarding these cases in the complaint (instead of mentioning them for the first time in an exhibit attached to his response to the motion to dismiss), he could have addressed these issues in his response.

The next allegation in the complaint intended to support a policy/practice/custom claim is the allegation in paragraph 40 that "[r]ecently, Black Lives Matter has started a campaign to defund the Tempe Police Department because of their demonstrated excessive use of force against minorities."  This allegation is insufficient because, as the City correctly states in its reply, "[n]o details are provided as to what particular incidents Black Lives Matter claims to have involved excessive use of force, when these incidents occurred, what type of force was used, whether any court or governmental authority determine that reported actions violated someone's constitutional rights, whether Tempe was aware of the alleged incidents prior to the incident which gave rise to this case, or whether Tempe took any actions following the events." (Doc. 58 at 5.)  Moreover, the vague allegation that the campaign began "recently" suggests it could be based on events that occurred after the incident in this case (or was perhaps even based on the incident in this case).  The chronology is important because "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the city and the opportunity to conform to constitutional dictates.'" *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (cleaned up).

Next, in paragraph 41, the complaint alleges that "[i]n December, 2019, City of Tempe police officers used excessive force by Tasing an unarmed African-American male holding his one-year old son.  That case is presently pending before the United States District Court for the District of Arizona (*Oakry v. City of Tempe*, case no. 2:20-cv-01167)."[3]  This allegation suffers from the same chronological flaw discussed in the preceding paragraph.  Additionally, a single incident could not establish the necessary pattern. *Trevino*, 99 F.3d at 918.

Finally, in paragraph 42, the complaint alleges that "Tempe Police Chief Sylvia Moir resigned from her position in early 2020.  City Manager Andrew Ching reported that the City of Tempe believed it needed a new leader to oversee the long-term changes in the

---

[3]  The operative complaint in *Oakry* (D. Ariz., Case No. 20-cv-1167, Doc. 45 ¶ 1) alleges that the incident in that case occurred in June 2019, not in December 2019 as alleged here by Plaintiff. But either way, it occurred after the incident in this case.

police department. In an article published by The Crime Report, Mr. Ching is quoted as stating: 'We're at a very crucial time in our society. The focus on social justice and systemic racism, especially as it applies to the police department, — not just here, but nationwide — is a significant topic of concern for myself. We have made a lot of progress but we have a lot of work to do and that work should be carried out by the next (police chief).'" This allegation fails for the same reasons as the others—it is devoid of specifics and may be based on incidents that post-dated the incident in this case.

For these reasons, to the extent Count Two is premised on a policy/practice/custom theory, it fails to state a claim.

### B.   **Failure To Train Or Supervise**

Municipal liability may also arise when a city fails to adequately train or supervise its employees. *See, e.g.*, *Connick*, 563 U.S. at 59-61 (analyzing claim that district attorney's office was indifferent to the need to train its prosecutors about *Brady* disclosure obligations); *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (analyzing claim that county failed to properly train deputy sheriffs to not sexually assault women); *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("A failure to train or supervise can amount to a policy or custom sufficient to impose [§ 1983] liability.") (citation omitted). A plaintiff pursuing liability based on a failure to train or supervise must allege that the municipality exhibited "'deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citation omitted).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It may be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Additionally, "[a] pattern of similar constitutional violations by

untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). This requires a plaintiff to show that "policymakers were on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights," but chose not to remedy the omission. *Id.* at 61. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Notably, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

The City argues that the complaint offers only vague references to other incidents in which Tempe officers used excessive force and fails to allege how these vague references establish a failure to train or supervise. For example, the City contends that "Mr. Ching's statements about moving forward with a new police chief and his commitment to racial and social justice do[] not establish nor imply a pattern or knowledge of constitutional violations by the Tempe police. Moreover, former Chief Moir's resignation does not establish knowledge of unconstitutional behavior; it only reflects a change in leadership." (Doc. 55 at 10.) In response, Plaintiff largely reiterates his arguments—which are addressed and rejected in Part II.A above—that a plaintiff asserting a *Monell* claim need not provide specific, non-conclusory allegations to survive a motion to dismiss and/or that the complaint, when read in conjunction with Exhibit A, adequately alleges a pattern of prior incidents. (Doc. 57 at 8-11.)

The Court agrees with the City that the failure-to-train claim must be dismissed. First, the complaint fails to provide non-conclusory allegations of a pattern of similar constitutional violations, and such a pattern alone is "ordinarily necessary" to support a failure-to-train claim. *Connick*, 563 U.S. at 62. *See generally Wettstein v. City of Riverside*, 2020 WL 2199005, *5 (C.D. Cal. 2020) ("While there is no per se rule for the amount of unconstitutional incidents required to establish a custom under *Monell*, one or

two incidents ordinarily cannot establish a custom, while more incidents may permit the inference of a custom, taking into account their similarity, their timing, and subsequent actions by the municipality. The Ninth Circuit and district courts within the Ninth Circuit have repeatedly declined to infer a custom of constitutional violations based on two unconstitutional incidents alone.") (cleaned up) (collecting cases). Second, the complaint contains no allegations whatsoever regarding the contours of the City's training program, and thus does not plausibly allege that the unspecified deficiencies in this undescribed training program were somehow the cause of the unspecified earlier incidents or served as the causal link for Plaintiff's injury.

### C. **Failure To Investigate Or Discipline/Ratification**

"[A] local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. City of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (citation omitted). Ratification can be demonstrated by a failure to discipline. *Id.* at 1253. However, "[a] policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). The policymaker must make a "conscious, affirmative choice" to approve the conduct at issue. *Clouthier*, 591 F.2d at 1250.

The City argues that any ratification claim must fail because the complaint does not allege that (1) there were previous specific incidents of unconstitutional conduct involving the defendant officers—or other officers—for which the City did not discipline them; (2) it was the City's policy not to investigate or discipline its officers for unconstitutional conduct; (3) any previous failure to discipline caused the incident at issue here; or (4) specific policymakers knew the involved officers' use of force was unconstitutional yet made a "conscious, affirmative choice" to approve the behavior and the basis for it. (Doc. 55 at 8.) In response, Plaintiff again repeats his flawed arguments about the pleading requirements applicable to *Monell* claims and argues that, "[t]hrough discovery" or "[w]ith

- 11 -

the assistance of discovery," he "will be able to establish that [the City] ratified the actions of Officers Payne and Conklin by not only failing to punish, but also failing to even investigate their excessive use of force in any situation such as this one where the victim . . . was unarmed and only 130 pounds." (Doc. 57 at 6-8.)

The City has the better side of these arguments. With respect to the concepts of investigation and ratification, the complaint merely alleges, in conclusory fashion, that the City's "policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned by the [City's] failure to train, supervise, and investigate any of the officers in this incident amounting to deliberate indifference to Plaintiff's constitutional rights." (Doc. 47 ¶ 38.) That is it. The complaint is devoid of any facts—as to both the incident at issue here and the "multiple cases of excessive force" to which Plaintiff alludes—demonstrating that specific policymakers made a "conscious, deliberate choice" to ratify unconstitutional conduct or that there was a policy or custom of declining to investigate similar incidents. Nor does Plaintiff explain how the *Oakry* case—which, again, occurred the year after the incident in this case—could support a ratification or failure-to-investigate claim. Plaintiff thus fails to state a claim on a theory of ratification or failure to investigate or discipline.

III.   Leave To Amend

Plaintiff requests leave to amend in the event of dismissal. (Doc. 57 at 10.) This request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Additionally, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil. Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Although the City makes a strong argument that amending the complaint would be futile because none of the cases listed in Exhibit A would support a *Monell* claim (Doc. 58 at 9-11), the Court is hesitant to reach any final conclusions on this topic without first hearing Plaintiff's counter-arguments. Unfortunately, due to the manner in which the briefing process unfolded—where Plaintiff was operating under a mistaken understanding of the applicable pleading standards and sought to identify the prior excessive-force incidents for the first time in an exhibit attached to his response to the motion to dismiss—the matter has not been fully explored through the adversary process. Given this backdrop, and in light of the Ninth Circuit's liberal policy favoring amendment and the fact that Plaintiff has not previously sought leave to amend from the Court,[4] Plaintiff is granted leave to amend his complaint to add whatever details regarding past incidents (as well as regarding the City's alleged training and investigation failures and alleged ratification efforts) he believes would be sufficient to address the deficiencies identified in this order.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 55) is **granted**. Counts Two and Three of the Second Amended Complaint are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend is granted. Plaintiff may file a Third Amended Complaint within 14 days of the issuance of this order. If Plaintiff files a Third Amended Complaint, the changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

Dated this 29th day of November, 2021.

Dominic W. Lanza
United States District Judge

---

[4] Plaintiff filed his initial complaint in October 2020 (Doc. 1), filed a first amended complaint as a matter of right in January 2021 before the original complaint had been served (Doc. 9), and filed the operative complaint, the second amended complaint, with the consent of Defendants in July 2021 (Doc. 47).